896 F.2d 553
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Calvin J. HOUGHLAND; Estate of J.G. Page, Jr.,
Plaintiffs-Appellants Cross-Appellees,
v.
LEASEWAY TRANSPORTATION CORPORATION, Defendant-Appellee
Cross-Appellant
 Nos. 89-5255, 89-5316 and 89-5999.
 United States Court of Appeals, Sixth Circuit.
 Feb. 28, 1990.
 
 Before BOYCE F. MARTIN, Jr., and RYAN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 BOYCE F. MARTIN, JR., Circuit Judge.
 
 
 1
 Calvin Houghland and J.G. Page, Jr., appeal the district court's judgment in favor of Leaseway Transportation Corp. and the order granting attorney fees to Leaseway in this Tennessee diversity contract action. Leaseway cross-appeals the district court's denial of part of its counterclaims. On the basis of the district court opinion, we affirm.
 
 
 2
 Houghland and Page founded Fleet Transport Company in the 1940's. Houghland was chairman of Fleet's board of directors. Houghland owned 90 percent of the capital stock in Fleet and Page owned the remaining 10 percent. In the late 1970's, a decision was made to sell the company, and discussions to this end took place with Leaseway.
 
 
 3
 Houghland and Page executed a share purchase agreement with Leaseway for the purchase by Leaseway of all of their stock in Fleet on December 2, 1981. Leaseway was to acquire Fleet's stock for approximately $12,000,000 at closing, plus an additional $1,000,000 deferred payment to be made five years later with interest paid on the deferred amount at the rate of 9 percent per annum in semi-annual installments. A promissory note in the face amount of $900,000, payable according to its terms to Houghland, and a promissory note of $100,000, payable to Page, were signed on April 7, 1982, when the sale actually closed. The ten semi-annual interest payments to Houghland were each $40,500, and the interest payments to Page were each $4,500.
 
 
 4
 On or about October 3, 1984, Leaseway tendered to Houghland and Page what it considered to be justifiably reduced interest payments under the terms of the agreement. Leaseway tendered to Houghland $29,902.85 and to Page $3,322.54. Both refused the checks and returned them to Leaseway. Houghland and Page formally advised Leaseway that it was being provided notice of default and, as provided in the promissory notes, that if such default continued for ten days after receipt by Leaseway of written notice, then the entire face amount of the notes would become due. Subsequently, Houghland and Page demanded the full amount of the notes, with accrued interest.
 
 
 5
 Houghland and Page filed suit against Leaseway seeking the full face value of the notes and the accrued interest, as well as costs and attorneys fees. Leaseway counterclaimed, alleging breach of warranties and covenants which resulted in claims and losses of more than $1,000,000. Leaseway also sought a declaration that it had no further obligation under the promissory notes, and the recoupment of the excess cash payments of purchase price, interest, and its litigation expenses.
 
 
 6
 Leaseway claimed that section 14 of the share purchase agreement gave it the right to adjust the purchase price by the amount of any claims or losses in regard to matters outlined in the agreement. Section 16.2 of the agreement provided the manner in which Leaseway could reduce the purchase price. Leaseway concluded that because it had suffered claims and losses of more than $1,000,000, it was entitled to indemnity pursuant to section 16.1 of the agreement and to reduction of payments under section 16.2.
 
 
 7
 Because the promissory notes on which Houghland and Page brought suit were executed in conjunction with the share purchase agreement, the district court initially found that Leaseway's obligation to tender payments on the notes and the right of Houghland and Page to receive payments were subject to and qualified by the provisions of the agreement. The district court proceeded to determine whether Leaseway had incurred claims or losses for which it was entitled to indemnity pursuant to section 16.1 of the agreement.
 
 
 8
 The first of Leaseway's indemnity claims arose out of the payment of retrospective insurance premiums that were owed by Fleet. The district court found that Leaseway had paid out over $600,000 in retrospective premiums on behalf of Fleet, and that Houghland and Page had not reimbursed Leaseway for those payments. The court held that the language in the agreement unambiguously indicated that Houghland and Page were to be liable for reimbursement to Leaseway for such payments, and that Leaseway was entitled to indemnification under section 16.1(b) of the agreement.
 
 
 9
 Leaseway's second indemnity claim was for expenditures it made on four waste water treatment facilities that had been previously owned by Fleet. The expenditures were necessary to correct violations of environmental regulations which had occurred while Fleet owned the facilities. The district court found, however, that Leaseway failed to present sufficient evidence to demonstrate that it was entitled to indemnification for these expenditures.
 
 
 10
 The third indemnity claim made by Leaseway was also rejected by the district court. Leaseway claimed that it was entitled to indemnification for loss of business and other expenses resulting from an investigation of thefts at Fleet's Mobile, Alabama operation. The district court held that any losses experienced by Leaseway that were predicated on the investigation at the Mobile site were the result of Leaseway's own actions.
 
 
 11
 Leaseway's fourth indemnity claim was for money spent by Leaseway for the repair of a railroad spur track that Fleet had leased from Southern Railway. Before Leaseway acquired Fleet, Southern had informed Fleet that it had to repair the leased track. The repair work was eventually performed by Leaseway, and Southern reimbursed Leaseway for only part of the cost of the repairs. The district court determined that Houghland and Page had breached a covenant in the agreement by failing to make the repairs prior to the sale of Fleet. The court found that the cost of the repairs constituted a loss within the contemplation of section 16.1. The court, therefore, concluded that Leaseway was entitled to indemnification for the difference between the amount it paid out for repairs and the amount it received from Southern.
 
 
 12
 The fifth indemnity claim made by Leaseway arose out of two lawsuits which were in their beginning stages at the time of Leaseway's acquisition of Fleet. One of the cases was in the share purchase agreement which specified that litigation was pending against Fleet. Because Leaseway knew of this claim against Fleet, the district court held that it was not entitled to indemnification based on a payment made to settle the claim.
 
 
 13
 The other case also contained a claim pending against Fleet, but it was not listed in the agreement. The district court found that Houghland and Page breached a covenant in the agreement by not indicating that this litigation was pending. The court held that Leaseway was entitled to indemnification under section 16.1(b) for the costs it incurred in settling this case.
 
 
 14
 The sixth and final indemnity claim made by Leaseway was for federal and state taxes assessed after the closing date of the sale. These taxes were for tax periods prior to Leaseway's acquisition of Fleet. The district court found that Houghland and Page had breached a representation in the agreement which stated that all taxes for the years prior to Leaseway's acquisition had been paid in full. The court held that Houghland and Page had to indemnify Leaseway under section 16.1(a) for the full amount of tax payments it had made on Fleet's behalf.
 
 
 15
 After concluding that Leaseway was entitled to indemnification from Houghland and Page in the amount of $763,356.24, the district court then had to determine if Leaseway's reduction of the interest payments on the two notes was proper. Houghland and Page argued that section 16.2, relied upon by Leaseway in making the reductions, was so convoluted as to be rendered void. Though the district court found section 16.2 to be less than clear, a conclusion with which we agree, it found that it was not so incomprehensible as to be rendered void. The court held that section 16.2 permitted Leaseway to reduce the interest payments in the exact manner that it had reduced those payments. The court further concluded that Leaseway was not in default on the notes and, therefore, granted summary judgment in favor of Leaseway on the claims made by Houghland and Page.
 
 
 16
 With the respect to Leaseway's counterclaim, the district court also found in favor of Leaseway. The court found that Leaseway had deducted $261,658 on a pro rata basis from the principal of the two notes when it reduced the interest payments. Because the court had already determined that Leaseway was entitled to indemnification in the amount of $763,356.24, the court held that Leaseway was entitled to deduct that amount from the principal of the two notes rather than $261,658. In addition, the court held that Leaseway was entitled to reduce the remaining six interest payments on each note accordingly.
 
 
 17
 Finally, the district court held that Leaseway was entitled to attorney's fees and expenses under section 16.1(d) of the share purchase agreement. The court, however, denied Leaseway's claim for an award of prejudgment interest.
 
 
 18
 On appeal, Houghland and Page argue that the district court erred in finding that they were liable to Leaseway for the retrospective insurance premiums. They contend that the district court improperly assessed the record and incorrectly interpreted the share purchase agreement. In a similar fashion, Houghland and Page also contend that the district court erred in granting indemnity on the other claims asserted by Leaseway. Finally, Houghland and Page argue that the district court mistakenly found that the agreement permitted Leaseway to deduct sums from its promissory note payments.
 
 
 19
 At the heart of these arguments, is Houghland and Page's contention that the district court's findings of fact disregarded the facts to which the parties had stipulated. The controlling standard of review on appeal is that factual findings of the trial court will not be set aside "unless clearly erroneous." Fed.R.Civ.P. 52(a); See Anderson v. City of Bessemer City, 470 U.S. 564, 574-75 (1985). We find nothing in the record to indicate that any of the district court's findings of fact were clearly erroneous. On the contrary, the findings of the district court were amply supported on the record as a whole. We decline, therefore, to set aside any of the factual findings of the district court.
 
 
 20
 The other assertion relied upon by Houghland and Page as a basis for their arguments is that the district court consistently misinterpreted the share purchase agreement. They do not, however, suggest that the court misstated the law pertaining to the construction of contracts in Tennessee. Instead, they attack the court's analysis of a number of sections of the agreement.
 
 
 21
 We find that Houghland and Page have identified no reversible error in the district court's construction of the agreement. In interpreting a contract under Tennessee law, a court must ascertain the intent of the parties, construe the contract as a whole, and give effect to every part of the contract. See, e.g., City of Memphis v. Ford Motor Co., 304 F.2d 845 (6th Cir.1962). Houghland and Page expressly "represented, warranted and covenanted" to Leaseway in section 9.1 of the agreement that they would reimburse retrospective insurance premiums and similar payments after the sale, that Fleet's business relationships were satisfactory, that they had disclosed all pending litigation against Fleet of which they were aware, and that all of Fleet's taxes had been paid. They explicitly agreed in section 16.1 to "indemnify, defend and hold harmless" Leaseway from and against loss and damage. And they authorized Leaseway to deduct under section 16.2 any "Claim which it pays or Loss which it sustains" from the amount of the purchase price held back. It is clear from the above language, therefore, that the district court did not err in its interpretation of the agreement.
 
 
 22
 Houghland and Page also appeal the district court's order holding them liable for the expenses and attorney's fees incurred by Leaseway. They challenge the authority of the district court to award such litigation expenses, as well as the amount assessed.
 
 
 23
 Section 16.1(d) of the agreement specifically requires Houghland and Page to indemnify Leaseway for the costs and expenses, including reasonable attorney's fees, of all actions incident to the indemnity obligations set forth in the agreement. We agree with the district court that the language in this section of the agreement allowed the court to award Leaseway its litigation expenses. We find no evidence that the district court abused its discretion in fixing the amount to be awarded and, therefore, uphold the district court's decision on this issue.
 
 
 24
 With respect to Leaseway's cross-appeal, we find its arguments to be without merit. Leaseway, just like Houghland and Page, has not identified any reversible error in the district court's interpretation of the agreement. We conclude that Leaseway has failed to demonstrate any legal defect or clear error of fact in the district court's determination of these issues.
 
 
 25
 The judgment of the district court is affirmed.